UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-22302-CIV-ALTMAN/MAYNARD

AILEEN LISABET PIEDRA,

    **Plaintiff,**

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Aileen Lisabet Piedra, brings this action under the Social Security Act seeking judicial review of Defendant's final decision denying her applications for disability benefits. DE 1. Plaintiff exhausted her administrative remedies and Defendant's decision is ripe for judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3). Presiding U.S. District Judge Roy K. Altman has referred this matter to me for a report and recommendation on dispositive matters. DE 13.

After Defendant filed the certified administrative record, DE 7 (cited herein as "R. __"), the parties' filed cross-motions for summary judgment, DE 14, DE 16, and Plaintiff filed a reply, DE 17. Having carefully considered the parties' briefing and the record, I recommend that Plaintiff's Motion for Summary Judgment, DE 14, be **GRANTED**; that Defendant's Motion for Summary Judgment, DE 16, be **DENIED**; and that Defendant's administrative decision be **REVERSED AND REMANDED** for the following reasons.

## BACKGROUND

On May 14, 2021, Plaintiff applied for disability insurance benefits and supplemental security income, alleging a disability onset date of January 1, 2019, due to circulation issues, sleep apnea, memory issues, and high blood pressure. R. 257-63, 265-73, 323. Plaintiff's claims were denied initially and on reconsideration. R. 91-92, 104, 112.

On June 4, 2024, Plaintiff and her counsel appeared at a hearing before an administrative law judge (ALJ) however the hearing was reset to allow for the submission of approximately two years of outstanding medical records. R. 71-79. During this first hearing, Plaintiff amended her alleged disability onset date to April 2, 2021. DE 75. On October 16, 2024, Plaintiff and her counsel appeared before the same ALJ for a second hearing, during which Plaintiff and a vocational expert (VE) testified. R. 44-70. At this second hearing, Plaintiff alleged additional disabling impairments due to mental health issues, anxiety, post-traumatic stress disorder (PTSD), and inability to focus. R. 50-51. Plaintiff was 45 years old on her amended onset date with a high school education and no past relevant work. R. 75, 258, 265.

On January 15, 2025, the ALJ issued a decision finding Plaintiff not disabled since her amended onset date though the ALJ's decision date. R. 24-35. On March 25, 2025, the Appeals Council denied Plaintiff's timely request for review, making the ALJ's decision the Commissioner's final decision. R. 1-4. Plaintiff exhausted her administrative remedies and this lawsuit timely followed.

## STANDARD OF REVIEW

To qualify for Social Security benefits, a claimant must show that she is disabled. *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security Act defines

"disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

A disability benefits claim follows a multi-layered process before it can be reviewed in federal court.  A claimant first applies to a state agency for disability determinations, 42 U.S.C. § 421(a), after which the claimant is entitled to an evidentiary hearing before an ALJ.  *Heckler v. Day*, 467 U.S. 104, 106–07 (1984).  An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled.  *See* 20 C.F.R. § 404.1520(a)(4).  This five-step process determines if a claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"); (4) can perform past relevant work based on a residual functional capacity ("RFC") assessment; and (5) retains the ability to perform any work in the national economy.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *Hines–Sharp v. Comm'r of Soc. Sec.*, 511 Fed. Appx. 913, 915 n.2 (11th Cir. 2013).  If an individual is found disabled or not disabled at any step, further inquiry is unnecessary.  20 C.F.R. § 416.920(a)(4).

A claimant may appeal an ALJ's decision to an Appeals Council that must review the case and determine if the ALJ's "action, findings, or conclusion is contrary to the weight of the

evidence currently of record." *Heckler*, 467 U.S. at 107, n.5; 20 C.F.R. § 404.970(a). After completing the foregoing administrative process, a claimant may seek review in federal court. 42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260-61 (11th Cir. 2007).

The scope of judicial review is limited to determining if (1) substantial evidence supports the Commissioner's findings, and (2) the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). To make this determination, a reviewing court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). The Supreme Court recently explained that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

In testing for substantial evidence, a court may not "reweigh the evidence" or "decide the facts anew." *Winschel*, 631 F.3d at 1178. Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the court must defer to the ALJ's decision even if the evidence preponderates against it. *Crawford*, 363 F.3d at 1158-59 (citation omitted); *see also Biestek,* 139 S. Ct. at 1157 (2019) (the governing standard of review defers to the presiding ALJ, "who has seen the hearing up close"). However, the court will not "merely rubber-stamp a decision ... [and] must scrutinize the record as a whole to determine if the

4

decision reached is reasonable and supported by substantial evidence." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019); *see also Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1104 (11th Cir. 2021) ("Within this narrowly limited role, however, the federal courts 'do not act as automatons' … '[w]e retain an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable") (citation omitted).  Remand is appropriate for further factual development "where the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Washington*, 906 F.3d at 1358 (11th Cir. 2018) (citation omitted).

A reviewing court must also review the ALJ's decision to determine if the correct legal standards were applied.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide sufficient reasoning for determining that the proper legal analysis has been conducted, then the ALJ's decision must be reversed.  *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## THE ALJ'S DECISION

The ALJ in this case proceeded through the multi-step sequential analysis as follows.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 2, 2021, her amended disability onset date.  R. 27.

At step two, the ALJ found that Plaintiff had the following severe impairments: tachycardia, hypertension, diabetes, neuropathy, obesity, PTSD, depression, and anxiety.  R. 27.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404.  R. 27.  In making this assessment, the ALJ evaluated Plaintiff using the four

broad areas of mental functioning, known as the "Paragraph B" criteria, which assess how a claimant's mental impairments limit her functioning in a work setting. R. 28. For the first and third functional areas ("understanding, remembering, or applying information" and "concentrating, persisting or maintaining pace"), the ALJ found that Plaintiff has a moderate limitation. R. 28. For the second and third functional areas ("interacting with others" and "adapting or managing oneself"), the ALJ found Plaintiff has a mild limitation. R. 28. Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work with specified limitations. R. 29. Specifically, the ALJ found that Plaintiff had the RFC

> …to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant could lift, carry, push, and/or pull up to 20 pounds occasionally and 10 pounds frequently. She could sit for six hours total in an eight-hour workday, with normal breaks. She could stand and/or walk for six hours total in an eight-hour workday, with normal breaks. The claimant could occasionally kneel, crouch, crawl, stoop, and balance. She could occasionally climb ramps and stairs. She could never climb ladders, ropes, or scaffolds. She retains the ability to follow simple instructions. She could frequently interact with co-workers, supervisors, and the public. She could concentrate in two-hour increments without a break.

R. 29.

At step four, the ALJ found that Plaintiff had no past relevant work. R. 34.

At step five, considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ found Plaintiff capable of successfully adjusting to other jobs in the national economy such as fruit cutter, housekeeping cleaner, and garment sorter—all unskilled jobs with a light exertional level. R. 34-35. Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act since April 2, 2021 (her amended onset date) through January 15, 2025 (the ALJ's decision date). R. 35.

## DISCUSSION

Plaintiff raises two issues in this appeal. First, Plaintiff argues that the ALJ failed to consider possible reasons for Plaintiff's treatment noncompliance and gaps in treatment in violation of Social Security Ruling (SSR) 16-3p.[1] DE 14 at 2-6. Second, Plaintiff asserts the ALJ failed to reconcile significant inconsistencies in the evidence concerning Plaintiff's mental health. *Id.* at 6-9. I will address both issues in turn below.

### I. Failure to Consider Reasons for Treatment Noncompliance

First, Plaintiff argues that the ALJ erred in discounting her subjective complaints based on perceived noncompliance with prescribed treatment without properly considering if this noncompliance stemmed from Plaintiff's religious beliefs or serious mental health conditions, in violation of SSR 16-3p. Defendant counters that the ALJ reasonably considered Plaintiff's limited treatment history as only one of many factors in evaluating her RFC, thus requiring affirmance.

SSR 16-3p provides guidance on evaluating a claimant's subjective complaints about the effects of her pain and other symptoms. In relevant part, this ruling states as follows:

---

[1] Social Security Rulings are agency rulings published under the authority of the Social Security Commissioner. *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990).

> This is not to say that [federal courts] are bound by agency rulings that interpret an agency's regulations. We are not. *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981). But the Rulings are binding within the Social Security Administration. 20 C.F.R. § 402.35(b)(1) ("[SSA Rulings] are binding on all components of the Social Security Administration."). [Courts] require the agency to follow its regulations "where failure to enforce such regulations would adversely affect 'substantive rights of individuals.'" *First Ala. Bank, N.A. v. United States*, 981 F.2d 1226, 1230 n.5 (11th Cir. 1993) (quoting *Morton v. Ruiz*, 415 U.S. 199, 232, 94 S. Ct. 1055, 39 L. Ed. 2d 270 (1974)); see also *Romano-Murphy v. C.I.R.*, 816 F.3d 707, 720 (11th Cir. 2016); *Gonzalez v. Reno*, 212 F.3d 1338, 1349 (11th Cir. 2000) ("Agencies must respect their own procedural rules and regulations."). This is the case even where ... "the internal procedures are more rigorous than otherwise would be required." *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981) (per curiam).

*Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) (footnote omitted).

We will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities for an adult ... Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.

In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. **We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.** We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints. When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following:

- An individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms.
- An individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau.
- An individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms.
- An individual may not be able to afford treatment and may not have access to free or low-cost medical services.
- A medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual.
- An individual's symptoms may not be severe enough to prompt him or her to seek treatment, or the symptoms may be relieved with over the counter medications.
- **An individual's religious beliefs may prohibit prescribed treatment.**
- Due to various limitations (such as language or mental limitations), an individual may not understand the appropriate treatment for or the need for consistent treatment of his or her impairment.
- **Due to a mental impairment (for example, individuals with mental impairments that affect judgment, reality testing, or**

> **orientation), an individual may not be aware that he or she has a disorder that requires treatment.**
> - A child may disregard the level and frequency of treatment needed to maintain or improve functioning because it interferes with his or her participation in activities typical of other children his or her age without impairments.
>
> The above examples illustrate possible reasons an individual may not have pursued treatment. **However, we will consider and address reasons for not pursuing treatment that are pertinent to an individual's case. We will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them. We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.**

SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims* (Oct. 25, 2017), 2017 WL 5180304, at **9-10 (emphasis added) (footnote omitted).

In accordance with the above SSR and Eleventh Circuit precedent, an ALJ is permitted to consider the level or frequency of treatment when evaluating the severity of a claimant's conditions, however "an ALJ cannot draw any inferences about an individual's symptoms and their functional effects from a failure to seek medical treatment without first considering any explanations that the individual may provide." *Plier v. Comm'r of Soc. Sec.*, 2024 WL 2273626, at *6 (11th Cir. May 20, 2024) (citing *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267–68 (11th Cir. 2015) (per curiam)); *see also* 20 C.F.R. § 404.1530 (listing "examples of a good reason for not following treatment," including religious objections, prior unsuccessful surgeries, and risks associated with the treatment). When an ALJ primarily, if not exclusively, relies on the lack of seeking treatment and the ALJ does not consider any good cause explanation for the claimant's failure to seek treatment, remand for additional consideration is warranted. *Henry*, 802 F.3d at 1268. On the other hand, "if the ALJ's determination is also

9

based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists." *Id.*

Here, after citing proper legal standards, including SSR 16-3p, and describing Plaintiff's testimony about her various mental and physical impairments, the ALJ found Plaintiff's allegations "not fully supported by the medical evidence." R. 29-30. The ALJ summarized medical evidence from the relevant period—which included examination notes documenting Plaintiff's "disheveled" appearance, "anxious" or "depressed" mood, "poor insight/judgment" and "impaired" concentration, together with reports of her being "alert, clean, and well developed" with "intact" insight and judgment. R. 30-32 (citing R. 549, 988, 704-05, 715, 1134). In one examination note from February 25, 2022, cited by the ALJ, the examining professional documented Plaintiff's thought content as including "Delusions: Religious, Paranoia." R. 31 (citing R. 704). The ALJ also cited a series of notes from April to September of 2023 consistently reporting that Plaintiff "does not want medications." R. 32 (citing R. 1115, 1135, 1153, 1170, 1198).

Ultimately, after summarizing the evidence, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 32. As support for this conclusion, the ALJ stated:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the overall evidence of record. The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The medical evidence documents significant gaps in the claimant's treatment since the alleged onset

10

>   date. For example, the claimant was treated on April 2, 2021 at CL Brumback Primary Clinic but did not seek any treatment again until December 2022 at Community Health of South Florida, Inc. (Ex. 1F-3F). Moreover, the treatment notes from Agape Network document a gap in treatment of one year and seven months, from December 2022 to July 2024 (See Ex. 11F and 16F). Additionally, the record documents the claimant's non-compliance with medication and treatment throughout the period at issue (See e.g., Ex. 6F, page 31; 7F, page 5; 11F, page 19; 15F, page 33; and 16F, pages 3 and 7).

R. 33. Critically, the above reasoning by the ALJ demonstrates primary reliance on Plaintiff's lack of treatment and medication noncompliance to discount Plaintiff's subjective statements without squarely considering or addressing possible good cause reasons for this lack of treatment and noncompliance.

One reason the ALJ did not consider was Plaintiff's religious beliefs. The record shows that Plaintiff consistently reported over several years that her treatment noncompliance was based on her religious beliefs. *See* R. 550 (Plaintiff's April 2021 statement to medical provider that "she is a Christian with strong religious beliefs and this is what kept her from medical follow up"), 1079 (Plaintiff's July 2024 statement to medical provider that she is not taking medication because "I know God will heal[] me"), 53 (Plaintiff's October 2024 hearing testimony that she was not regularly taking prescribed medications because "I'm Christian, and I believe in the vitamins" and "I'd rather do things naturally"). The ALJ noted these reports in passing but did not affirmatively consider or discuss the impact of Plaintiff's stated religious beliefs on her failure to seek or comply with treatment.

Another reason the ALJ did not consider was Plaintiff's mental health. Medical professionals diagnosed Plaintiff with serious mental health impairments—including bipolar disorder, severe major depressive disorder with psychotic symptoms, chronic PTSD, and generalized anxiety disorder. R. 702-705, 725-29, 1080. The ALJ's decision acknowledged

11

that Plaintiff's severe impairments included PTSD, depression, and anxiety. R. 27. A biopsychosocial examination of Plaintiff in February 2022, included reported auditory hallucinations, religious/paranoia delusions, a "depressed" mood, poor impulse control, poor insight, and poor judgment. R. 704-05. Over two years later, in July 2024, Plaintiff was observed as disheveled with preoccupied yet respectful behavior, reports of auditory and visual hallucinations, religious delusions, and a depressed mood. R. 1078. A medical professional diagnosed her with major depressive disorder with psychotic symptoms; PTSD, and generalized anxiety disorder, and it was recommended that she be admitted to a residential mental health treatment program. R. 1077, 1080. At the hearing before the ALJ a few months later in October 2024, Plaintiff testified to having hallucinations where "God reveals things to me that have to do with witchcraft" and " I've also heard of a witch that I know the family in the past, that she calls you the pastor's wife, and I'll hear her voice every now and then." R. 56. Plaintiff further testified that she believed she was being followed and "I've been persecuted a lot for being a Christian and being a woman up there alone." R. 57. Despite this record evidence of possible deterioration in Plaintiff's mental health, the ALJ did not discuss or address the impact of Plaintiff's serious mental impairments on her ability to regularly seek treatment or follow a prescribed treatment regimen. The ALJ summarily reasoned that Plaintiff had "not generally received the type of medical treatment one would expect for a totally disabled individual" while noting "significant gaps" in treatment and continuous "non-compliance with medication and treatment," R. 33, implying that these circumstances undermined the credibility of Plaintiff's subjective reports and the overall severity of her impairments. However, the ALJ's decision contains no evaluation of Plaintiff's stated religious-based objection to proposed treatment or her serious mental health impairments as possible reasons she may not comply with treatment

12

or seek treatment consistent with the degree of her complaints under SSR 16-3p. The ALJ's silence on this point leaves this reviewing court unable to determine if the required analysis occurred.

While an ALJ need not accept a claimant's explanation or reasons for treatment noncompliance at face value, the decision must reflect that the explanation or reasons were at least considered. Accordingly, because the ALJ's decision here principally relies on Plaintiff's treatment noncompliance without addressing plausible reasons for such noncompliance, remand is necessary for further consideration. *See Henry*, 802 F.3d at 1268 (finding that ALJ erred in discrediting medical evidence as inconsistent with a claimant's "limited and conservative treatment" without developing the record or addressing the claimant's statement of inability to pay for continued medical treatment).

## II.   Failure to Resolve Inconsistencies in the Mental Health Evidence

Next, Plaintiff contends remand is warranted because the ALJ failed to reconcile significant inconsistencies within the mental health evidence of record. Defendant counters that the ALJ thoroughly discussed Plaintiff's objective medical evidence and that those records provide substantial evidence supporting the ALJ's findings.

"It is well-established that the ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) ("Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."). As such, where evidence is inadequate to determine whether the claimant is disabled, the ALJ should take steps to resolve the inadequacy—including recontacting the medical source, requesting additional evidence from the claimant, or asking the claimant to undergo a consultative examination. 20 C.F.R. §§

404.1520b(b)(2). However, an ALJ has no obligation to further develop the record when the available evidence is sufficient to make a disability determination. *See Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (per curiam) (explaining that a showing of prejudice, or a showing that the ALJ did not have all of the relevant evidence before him in the record or did not consider all of the evidence in the record, must be made before requiring remand); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (per curiam) (holding that the record, "which included the opinions of several physicians ..., was sufficient for a decision and additional expert testimony was unnecessary.").

Here, the ALJ cited and relied on reports of Plaintiff being alert and oriented and other similar reports of what the ALJ described as "essentially normal" mental examinations in reaching the decision that Plaintiff retained the ability to work. R. 30-31. However, the ALJ's decision does not reconcile these observations with other contemporaneous findings describing markedly different presentations—such as disheveled appearance, delusions, hallucinations, and notable affective disturbances including "poor insight and judgment." R. 704-05, 1077-78, 1080-81. The omission of any substantive discussion of these contrary findings suggests that the ALJ selectively relied on evidence supporting the non-disability determination, in contravention of precedent recognizing the episodic nature of severe mental impairments and requiring full and fair consideration of the record. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262, 1267-68 (11th Cir. 2019) (finding it insufficient for an ALJ to merely cite positive or neutral observations in support of discounting a medical opinion and acknowledging that severe mental impairments—in that case, diagnosed bipolar disorder—are episodic in nature such that claimants with such impairments experience good days and bad days and "the ALJ's citation of the good days as evidence of no disability did not support a finding that [the claimant]

did not suffer from a severe impairment (or that his doctors' treatment opinions are inconsistent with the record).").

Without a discussion of the internal inconsistences in the records of Plaintiff's mental health evaluations or an explanation to resolve such inconsistences, I cannot conclude that the ALJ's decision here is supported by substantial evidence.  Accordingly, I respectfully recommend remand for Defendant to properly evaluate and reconcile the conflicting mental health evidence in accordance with governing legal standards.

## **CONCLUSION**

The inquiry at this level of judicial review is limited to determining if Defendant's final administrative decision is supported by substantial evidence and based on proper legal standards.  In this case, I find it is not.  Specifically, the ALJ primarily relied on Plaintiff's noncompliance with treatment in discounting her subjective complaints but failed to account for her religious beliefs and her serious mental health impairments as reasons for such noncompliance.  Additionally, the ALJ failed to resolve inconsistencies in the evidence pertaining to Plaintiff's mental health impairments.  Together, these errors undermine the substantiality of the evidence supporting the ALJ's decision and demonstrate that the ALJ did not fully develop or fairly consider the entire record.  Remand is necessary to remedy these errors.  On remand, Defendant should be directed to address both issues in a reasoned and thorough manner consistent with governing legal standards.

Accordingly, I respectfully **RECOMMEND** that Plaintiff's Motion for Summary Judgment, DE 14, be **GRANTED**; that Defendant's Motion for Summary Judgment, DE 16, be **DENIED**; and that Defendant's final administrative decision be **REVERSED AND REMANDED** for further proceedings consistent with the findings made in this report.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Roy K. Altman. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of Non-Objection within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 28th day of October, 2025.

_____
SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE